UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOVIE DEWDROP LEEN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>M. TROTH, et al.,<br><br>　　　　Defendants. | No. 2:20-cv-02039 DJC DB<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims defendants used excessive force against him when responding to an incident that occurred on July 18, 2020. (ECF No. 1 at 3.) Before the court is defendants' fully briefed motion for summary judgment and their motion to stay discovery, as well as plaintiff's motion to appoint counsel. (ECF Nos. 28, 29, 32.) For the reasons set forth below, the undersigned will deny the motion to appoint counsel, deny the motion to stay discovery as moot, and recommend that the motion for summary judgment be granted.

## BACKGROUND

**I.　Relevant Procedural History**

Plaintiff initiated this action by filing the original complaint. (ECF No. 1.) Upon screening the undersigned determined the complaint contained a potentially cognizable excessive force claim against defendants. (ECF No. 15.) On March 1, defendants filed an answer, motion

1

1  for summary judgment, and motion to stay discovery.  (ECF Nos. 27, 28, 29.)  They argue that
2  they are entitled to summary judgment because plaintiff did not exhaust his administrative
3  remedies.  (ECF No. 28-2 at 1.)
4       Plaintiff filed a response and defendants filed a reply.  (ECF Nos. 30, 31.)  Plaintiff then
5  filed a motion to appoint counsel and another document that expressed opposition to the motion
6  for summary judgment.  (ECF Nos. 32, 33.)  Defendants asked the court to strike the latter filing
7  (ECF No. 33) as an unauthorized sur-reply. [1]  (ECF No. 34.)  Plaintiff subsequently filed copies of
8  his communications with prison officials as exhibits.  (ECF No. 36.)  The court denied
9  defendants' motion to strike and granted them thirty days to file a response to plaintiff's
10 unauthorized sur-reply.  (ECF No. 38.)  Defendants filed their response on June 5, 2023.  (ECF
11 No. 39.)

12 **II.  Allegations in the Amended Complaint**

13      Plaintiff's complaint states that, on July 18, 2020, he touched defendant Chu's hand, and
14 that in response, Chu pulled plaintiff's arms behind him while plaintiff was seated in a wheelchair
15 and began to strike plaintiff along a surgical scar on plaintiff's back.  (ECF No. 1 a 3.)  Plaintiff
16 alleges that defendant Williams then took control of plaintiff's legs, and that defendant Troth struck
17 him three times in the face with his knee, then used a closed fist to strike him on the face and head.
18 (Id.)  He claims that Williams and Troth then removed him to the floor and proceeded to punch him
19 in the back, ribs, back of the head, and area below his neck.  (Id.)  Defendants then allegedly pulled
20 a spit mask over plaintiff's head with such force that it tore.  (Id.)  Plaintiff further claims that
21 defendant Contreras injured his right wrist by twisting it.  (Id.)

22                **MOTION TO APPOINT COUNSEL**

23      Plaintiff filed a motion to appoint counsel after defendants filed their reply.  (ECF No.
24 32.)  He stated that his "hands are too damaged to write [his] response to the defendants' reply"
25 and that it was "very painful just to hold the ink pen."  (Id. at 1.)
26 ////

---

[1] "A surreply, or sur-reply, is an additional reply to a motion filed after the motion has already been fully briefed."  Rushdan v. Davey, No. 1:16-cv-0988 GSA PC, 2020 WL 2556549, at *1 (E.D. Cal. May 20, 2020).

The United States Supreme Court has ruled that district courts lack authority to require counsel to represent indigent prisoners in § 1983 cases. Mallard v. United States Dist. Court, 490 U.S. 296, 298 (1989). In certain exceptional circumstances, the district court may request the voluntary assistance of counsel pursuant to 28 U.S.C. § 1915(e)(1). Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991); Wood v. Housewright, 900 F.2d 1332, 1335–36 (9th Cir. 1990).

The test for exceptional circumstances requires the court to evaluate the plaintiff's likelihood of success on the merits and the ability of the plaintiff to articulate his claims pro se in light of the complexity of the legal issues involved. See Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986); Weygandt v. Look, 718 F.2d 952, 954 (9th Cir. 1983). Circumstances common to most prisoners, such as lack of legal education and limited law library access, do not establish exceptional circumstances that would warrant a request for voluntary assistance of counsel. See Klein v. Williams, 714 F. App'x 631, 634 (9th Cir. 2017).

In the present case, the court does not find the required exceptional circumstances. First, plaintiff had already filed his response to the motion for summary judgment (ECF No. 30) when he requested counsel and did not have a right to file a response to defendants' reply. (See ECF 38 at 3.) Even if he did, plaintiff expressed a need for assistance in drafting his filing due to the pain his hands, but did not explain why he could not receive that help from another inmate. Second, as discussed further below, the court cannot reach the merits of plaintiff's claim because the undersigned has determined that this case should be dismissed for failure to exhaust administrative remedies. Third, defendants have moved for summary judgment solely on the grounds that plaintiff failed to file a timely grievance regarding the July 18 altercation, and plaintiff states that he "can clearly explain exactly why [his] 602s and how [his] 602s were destroyed by CDCR guards to protect each other with the exhaustion loop hole." (ECF No. 32 at 1.) He could therefore sufficiently articulate his response to defendants' argument without the aid of an attorney. Accordingly, the motion to appoint counsel is denied.

////

////

////

**MOTION FOR SUMMARY JUDGMENT**

I. **The Parties' Briefing**

   A. **Defendants' Motion**

Defendants argue the court should grant summary judgment in their favor because plaintiff failed to properly exhaust administrative remedies before filing this case. (ECF No. 28-2.) Specifically, they indicate that plaintiff did not file a grievance with the Office of Grievances regarding the July 18 incident until January 2, 2021 or appeal the denial of the grievance as untimely. (Id. at 2; ECF No. 28-4 at 10.) In support, they filed copies of plaintiff's grievance and appeal log from July 2020 to July 2021 and the corresponding grievances ("602 forms"). (ECF Nos. 28-4, 28-5, 28-6, 28-7.)

   B. **Plaintiff's Opposition**

Plaintiff states that he filed a grievance about the July 18 altercation within thirty days of its occurrence. (ECF No. 30 at 2.) Plaintiff explains the absence of the grievance from his log by accusing staff of reviewing and discarding it. (See id. at 3, 5.) He also states that he was interviewed on camera about the altercation in September 2020, which he "believed was due to [his] 602." (Id. at 5.)

He attached the following documents, each created after the start of this litigation, because he believes they are evidence that staff had discarded his grievance about the altercation:

- An inmate request for interview form dated November 15, 2020, requesting a list of all outstanding grievances he had filed. (Id. at 11.)
- An inmate request for interview form dated November 18, 2020, asking why the grievance he claims to have filed about the July 18 incident was not on the log of grievances he had filed. (Id. at 12.)
- A grievance dated December 24, 2020, requesting a response to the grievance he claims to have filed about the July 18 altercation. (Id. at 8; see also ECF No. 28-6 at 56.)
- An inmate request for interview form dated February 3, 2021, requesting a copy of his alleged grievance, which he states was filed in August 2020. (ECF No. 30 at 10.)

4

### C. Defendants' Reply

Defendants' reply brief clarifies that plaintiff was interviewed on camera in September 2020 as part of an incident report regarding the July 18 altercation, not pursuant to a grievance filed by plaintiff. (ECF No. 31 at 3.) Additionally, defendants note that, in his complaint, plaintiff stated he had submitted a grievance to the "O.I.A." about the July 18 altercation. (ECF No. 31 at 3; ECF No. 1 at 3.) They filed a copy of plaintiff's legal mail log, which shows that plaintiff mailed a document to the Office of Internal Affairs on September 14, 2020. (ECF No. 31 at 3; ECF No. 31-2 at 43.) Based on the mail log, defendants theorize that plaintiff's use of the term "O.I.A." in his complaint refers to the Office of Internal Affairs, and that plaintiff submitted his grievance to that office instead of the Office of Grievances. (ECF No. 31 at 3–4.)

Defendants also provided a declaration from a sergeant whom plaintiff accused of discarding his grievance, which denied plaintiff's allegation and explained that "inmates were allowed to drop their 602s off into a locked drop box when released for showers." (ECF No. 31-1, ¶ 4.) The sergeant and other officers on his shift could not access prisoners' grievances because they did not have a key to open the box. (Id.)

### D. Plaintiff's unauthorized sur-reply

In a document filed after defendants' reply, plaintiff claims that he "placed two CDCR 602s in the U.S. Mail by sticking them out the side of [his] cell door, as I was instructed to do by the guards." (ECF No. 33 at 1.) He allegedly mailed these letters on July 23 and July 26, 2020, respectively. (Id.)

### E. Defendants' response to plaintiff's sur-reply

Defendants state that "California Medical Facility uses secured and clearly marked collection boxes within each housing unit for the submission and collection of grievances." (ECF No. 39 at 2.) "Inmates are expected to utilize the secured grievance collection boxes and this process was available to Plaintiff," though they retain the ability to submit a grievance by mail. (Id. (internal citation omitted); id. at 2 n.2.) Defendants also argue that plaintiff's own filings indicate he improperly sent his alleged grievance to the Office of Appeals instead of the Office of

////

5

1 Grievances, as required by California law.  (Id. at 2 (citing Cal. Code Regs. tit. 15, § 3482(a)(1));
2 see also ECF No. 30 at 10; ECF No. 36 at 4.)

### II.     Summary Judgment Standards

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.  In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  In attempting to

establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 477 U.S. at 248.

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (per curiam) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586 (citations omitted). "Where the record is taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank of Ariz. v. Cities Servs. Co., 391 U.S. 253, 289 (1986)).

On a motion for summary judgment, it is inappropriate for the court to weigh evidence or resolve competing inferences. "In ruling on a motion for summary judgment, the court must leave '[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts' to the jury." Foster v. Metropolitan Life Ins. Co., 243 F. App'x 208, 210 (9th Cir. 2007) (quoting Anderson, 477 U.S. at 255).

**III.    Material Facts**

Defendants filed a Statement of Undisputed Facts ("DSUF") as required by Local Rule 260(a) along with their motion for summary judgment. (ECF No. 28-3.) Plaintiff's filings in

opposition to defendant's motion for summary judgment fail to comply with Rule 260(b). (See ECF Nos. 30, 33.) Rule 260(b) requires that a party opposing a motion for summary judgment "shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial." However, in light of plaintiff's pro se status the court has reviewed plaintiff's filings in an effort to discern whether he denies any material fact in defendant's statement of undisputed facts.

The court is mindful of the Ninth Circuit's instruction that district courts are to "construe liberally motion papers and pleadings filed by pro se inmates and should avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). Accordingly, the court considers the record before it in its entirety despite plaintiff's failure to be in strict compliance with the applicable rules. However, only those assertions in the opposition that have evidentiary support in the record will be considered.

### A. Undisputed Facts

Plaintiff alleges that Defendants used excessive force against him on July 18, 2020. (DSUF (ECF No. 28-3) at ¶ 1.)

Plaintiff filed the instant case regarding his July 18, 2020, allegation on October 13, 2020. (DSUF (ECF No. 28-3) at ¶ 2.)

There is no record of plaintiff submitting a grievance regarding his July 18, 2020, allegations prior to October 13, 2020. (DSUF (ECF No. 28-3) at ¶ 3.)

Plaintiff submitted a grievance regarding his July 18, 2020, allegation on January 2, 2021, and it was received by the Office of Grievances on January 6, 2021. (DSUF (ECF No. 28-3) at ¶ 4.)

Plaintiff's grievance regarding his July 18, 2020, allegation states: "On July 18, 2020 I was attacked and beat and assaulted by CMF Correctional Sergeant M. Troth. The Court requires that I file this grievance to exhaust my remedies." (DSUF (ECF No. 28-3) at ¶ 5.)

////

Plaintiff's grievance regarding his July 18, 2020, allegation was rejected by the Office of Grievances on January 15, 2021, because it was untimely. (DSUF (ECF No. 28-3) at ¶ 6.)

There is no record of plaintiff appealing the rejection of his grievance regarding the July 18, 2020, allegation. (DSUF (ECF No. 28-3) at ¶ 7.)

### B. Disputed Facts

Plaintiff admits all facts in the DSUF, but argues that there is no record of him filing a timely grievance about the July 18 incident because staff discarded the grievance, thereby making the grievance process unavailable to him. (ECF No. 30 at 3.) Defendants deny this accusation. (See generally ECF Nos. 31, 39.)

### IV. Discussion

#### A. Legal Standards – Exhaustion of Administrative Remedies

##### 1. PLRA Exhaustion Requirement

Because plaintiff is a prisoner challenging the conditions of his confinement, his claims are subject to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). The PLRA mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

Regardless of the relief sought, a prisoner must pursue an appeal through all levels of a prison's grievance process as long as some remedy remains available. "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies . . . available,' and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis and alteration in original) (citing Booth v. Churner, 532 U.S. 731, 736 (2001)).

"Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate . . . must exhaust available remedies, but need not exhaust

unavailable ones." Ross v. Blake, 578 U.S. 632, 642 (2016) (brackets in original). In discussing availability in Ross, the Supreme Court identified three circumstances in which administrative remedies were unavailable: (1) where an administrative remedy "operates as a simple dead end" in which officers are "unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) where an administrative scheme is "incapable of use" because "no ordinary prisoner can discern or navigate it;" and (3) where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 642–44. "[A]side from [the unavailability] exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.'" Id. at 639. "[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." Id.

**2. California's Inmate Grievance Process**

"The California prison system's requirements 'define the boundaries of proper exhaustion." Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) (quoting Jones v. Bock, 549 U.S. 199, 218 (2007)). California prisoners may "submit a written grievance to the department containing one or more claims . . . to dispute a policy, decision, action, condition, or omission by the department or departmental staff." Cal. Code Regs. tit. 15, § 3481(a). During the time period relevant to this action,[2] the grievance process consisted of two levels of review. Inmates are required to submit a grievance in writing to the Institutional Office of Grievances at the institution where they are housed within sixty days. Id., § 3482(a)(1), (b)(1). The Office of Grievances is required to issue a written grievance decision within sixty days. Id., § 3483(g). If the inmate is dissatisfied, they may submit an appeal to the Office of Appeals within sixty days of receiving the Office of Grievance decision. Id., § 3484(b). In general, an appeal is exhausted when the Office of Appeals issues a final decision. Id., § 3485(l).

////

---

[2] In 2020, California changed the grievance system from a three-tier system to a two-tier system. The change became effective on June 1, 2020, after plaintiff initiated the relevant appeal in the present case. See Cal. Code Regs. tit. 15, § 3480. The event giving rise to the claim occurred in July 2020, after the change became effective. All citations to the California code in the text refer to the current version of the law.

1    A California prisoner is required to submit an appeal at the appropriate level and proceed
2    to the highest level of review available to him. Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir.
3    2005); Bennet v. King, 293 F.3d 1096, 1098 (9th Cir. 2002). In submitting a grievance, an
4    inmate is required to "describe all information known and available to [him] regarding the claim
5    including key dates and times, names and titles of all involved staff members (or a description of
6    those staff members), and names and titles of all witnesses, to the best of the claimant's
7    knowledge" and "include all supporting documents available to the claimant related to the claim
8    or identity to the best of the claimant's ability all relevant records with sufficient specificity for
9    those records to be located." Cal. Code Regs. tit. 15, § 3482(c)(2), (c)(4).

**B. Analysis**

There is no genuine dispute of material fact over whether plaintiff exhausted his administrative remedies with respect to the July 18 incident. His filings indicate that he did not. In his response to the motion for summary judgment, plaintiff wrote:

> . . . I know for 100% fact that I put a 602 on the guards that I named M. Troth et al and I put it in before 30 days from the actions that they did to me on July 18, 2020. While I was housed in ad-seg I found out that all inmate mail from housing units M-3 and N-3 don't exit the unit until after the M-3, 3rd watch sergeant Brady "screens" it. . . . I sent in [inmate interview request] forms requesting to know where my 602 from August 2020 was at and as soon as I found out that my 602 had been thrown away, I submitted a similar 602 log number 71796 and it was screened out. . . . [A]s soon as I figured out that it was disposed of, I sent [inmate interview request] forms then submitted another 602 . . .

(ECF No. 30 at 2–3.) According to this account, plaintiff first submitted a grievance about the July 18 incident in August 2020, which he implies he sent by mail. He then submitted a second grievance, log number 71796, which corresponds with a 602 form plaintiff submitted on December 24, 2020, requesting a response to an earlier grievance he claims to have filed about the July 18 altercation. (ECF No. 28-6 at 56.) He then submitted a third grievance, which may be the January 2, 2021 grievance alleging excessive force. (ECF No. 28-4 at 10.) Later, plaintiff filed with the court a copy of a letter he sent to the Chief of Appeals on December 8, 2020, in which he wrote: "I sent you a 602 on August 30, 2020. I have not received a response from you or anyone. This 602 concerns a July 18, 2020, incident of excessive use of force by CMF staff. I

11

1  sent it out legal mail to you on 8/30/2020." (ECF No. 36 at 4.) By plaintiff's own admission,
2  then, he submitted the August 2020 grievance to the Office of Appeals (OOA), instead of the
3  Office of Grievances. Cf. Cal. Code Regs. tit. 15, § 3482(a)(1). Plaintiff therefore failed to
4  appropriately exhaust his administrative remedies because he did not follow the correct
5  procedures for filing a grievance.

6  In filings made after his response to the motion for summary judgment, plaintiff claims to
7  have submitted two grievances on July 23 and 26, 2020, but he has not offered supporting
8  evidence. (ECF No. 32 at 2; ECF No. 33 at 1.) His mail log does not show him sending any legal
9  mail between July 15 and August 10, 2020, but it does record a letter to the Chief of Inmate
10 Appeals sent on August 11, 2020, consistent with plaintiff's earlier account that he submitted a
11 grievance in August 2020.[3] (ECF No. 31-2 at 43.) Additionally, none of plaintiff's
12 communications with prison officials state that he submitted one or more grievances in July 2020
13 about the July 18 incident. (See generally ECF Nos. 28-4, 28-5, 28-6, 28-7, 30 at 8–12.) In his
14 December 2020 letter to the Chief of Appeals and a February 2021 inmate interview request
15 form, he asserts that he submitted his grievance in August 2020. (ECF No. 30 at 10; ECF No. 36
16 at 4.) Plaintiff's motion for appointment of counsel, filed on May 25, 2022, appears to be the first
17 time he claims to have submitted grievances on July 23 and 26. (ECF No. 32 at 2.) Drawing all
18 inferences supported by the evidence in plaintiff's favor, to the extent plaintiff grieved the alleged
19 use of excessive force in the sixty-day period after July 18, he only submitted one grievance, in
20 August 2020. As discussed above, plaintiff admits to having improperly sent it to OOA.

21 Plaintiff attempts to blame prison officials for this error, explaining that the grievance
22 process "underwent a major change and the new process was not explained to me, as I was still in
23 ad-seg and I was not provided a Title 15 Rules Book, so I understood that I wasn't able to 602
24 this issue at the Office of Grievances." (ECF No. 33 at 2.) The grievance rules underwent
25 changes in 2020 that took effect on June 1, 2020. See supra note 2. Plaintiff was placed in

---

[3] On August 8, 2020, plaintiff sent an "emergency" 602 form to OOA requesting immediate release because he believed he had health conditions that put him at significant risk of severe illness or death from COVID-19. (ECF No. 28-4 at 33, 38.) OOA received it on August 17, 2020. (Id.) It remains possible that this request corresponds with the August 11, 2020, entry on plaintiff's mail log.

1 administrative segregation on July 18, 2020, the same day as the alleged use of excessive force,
2 meaning that the rule changes took effect more than a month before his reassignment. (See ECF
3 No. 28-4 at 24.) From July 27 to September 14, 2020, plaintiff also submitted five 602 forms to
4 the Office of Grievances regarding other matters; on each form, in the box designating plaintiff's
5 assignment status, he wrote that he was in administrative segregation. (See id. at 18, 24, 53; ECF
6 No. 28-5 at 2, 10.) These forms demonstrate that plaintiff was familiar with the new grievance
7 process in the sixty-day period after July 18, and that it remained available to him.

8       This case is distinguishable from other cases in which this court found a genuine dispute
9 of material fact when a prisoner and prison officials disagreed over whether the prisoner had
10 submitted or appealed a grievance. In Powell v. Gomes, the defendants argued that the plaintiff
11 had not filed an appeal after officials denied his grievance, but the plaintiff claimed to have
12 submitted his appeal by institutional mail. No. 2:21-cv-0781 DB P, 2022 WL 17904454, a *1–*2
13 (E.D. Cal. Dec. 23, 2022). The court determined that summary judgment was inappropriate
14 because the defendants did not offer evidence contradicting the plaintiff's claim that he placed his
15 appeal in the mail, or affirming or opposing the plaintiff's claims regarding prison mail
16 procedures. Id. at *5. The defendants also failed to offer evidence contradicting the plaintiff's
17 claim that he had been delayed in filing the appeal because he was quarantined after testing
18 positive for COVID-19, and that prisoners in quarantine could not send mail. Id. In Gaines v.
19 California Department of Corrections, the court found a genuine dispute of material fact where
20 the plaintiff "presented declarations from himself and the inmate that prepared the grievance
21 setting forth the substance of the grievance, when it was completed and when it was placed in the
22 institution's mail." No. 1:15-cv-00587 LJO SAB (PC), 2019 WL 4243230, at *14 (E.D. Cal. Sep.
23 6, 2019).

24       The facts of the instant case are more akin to those presented in Rodgers v. Reynaga.
25 There, the court found summary judgment appropriate where the plaintiff accused prison
26 officials, without evidence, of ignoring or destroying his appeal, to explain why there was no
27 record of him submitting an appeal. No. CV 1–06–1083 JAT, 2009 WL 2985731, at *2 (E.D.
28 Cal. Sep. 16, 2009). The court held that there was no genuine issue of material fact because the

13

"only evidence Plaintiff offers that would support any of these propositions are the conclusory allegations of his own declaration." Id. at *3. The court reasoned, "To grant Plaintiff an exception to PLRA's demand for exhaustion based solely on Plaintiff's self-serving testimony that his grievance was surreptitiously destroyed by prison officials would completely undermine the rule." Id.

Here, plaintiff's own filings and his mail log demonstrate that if he filed a grievance about the July 18 incident prior to the sixty-day deadline, he did so in August 2020 and improperly mailed it to the OOA. He has not produced any evidence to show that he filed additional grievances before the deadline, and unlike the plaintiff in Powell, he has not articulated any policy or circumstances that interfered with his ability to submit a timely grievance to the Office of Grievances. As in Rodgers, plaintiff only offers uncorroborated accusations that prison officials discarded his grievance, while also accusing them of failing to apprise him of new grievance procedures, an assertion contradicted by records showing he properly submitted multiple grievances to the Office of Grievances during the same period. (ECF No. 30 at 2–3; ECF No. 33 at 2.) Accordingly, the undersigned recommends that defendants' motion for summary judgment be granted.

## MOTION TO STAY DISCOVERY

Defendants have also filed a motion to stay discovery unrelated to the issue of exhaustion, which plaintiff has not opposed. Because the undersigned recommends that defendants' motion for summary judgment be granted, the court will deny defendants' motion to stay discovery as moot, without prejudice to its renewal if the findings and recommendations herein are not adopted.

## CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to appoint counsel (ECF No. 32) is denied; and
2. Defendants' motion to stay discovery (ECF No. 29) is denied as moot, without prejudice to its renewal if the findings and recommendations herein are not adopted.

////

IT IS HEREBY RECOMMENDED that defendant's motion for summary judgment (ECF No. 28) be granted.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty days after being served with these findings and recommendations, either party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 16, 2023

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DB:15
DB/DB Prisoner Inbox/Civil Rights/S/leen2039.msj fr

15